Mason, J.
This case comes before the court on the petition of the above named parties, under and by virtue of the authority conferred by sections 49 and 50, 2 E. 8., 525, fifth edition-The 49th section authorizes the application, and the 50th section declares that it shall be the duty of the supreme court, upon such application to proceed forthwith in a summary way to hear the’ proofs and allegations of the parties, &c., and thereupon to make such order and grant such relief as the circumstances and justice of the case shall seem to require, and then declares that if the election complained of shall be set aside, the supreme court may order a new election, &c. These petitioners seek by these proceedings to have declared invalid and set aside the election of directors of the Atlantic Mail Steamship Company, held on the 13th day of November, 1866.
This election is sought to be set aside because all the stockholders of the $4,000,000 increased stock were deprived of their right to vote in the election of such directors. The stock-
holders of this new stock were restrained by injunction issuing' out of the court of common pleas of this city, and which was served on the day and just as the inspectors of election were about to proceed with the election. I will only say that the injunction itself should be regarded, perhaps, as prima fade evidence of their having no right to vote on this stock.
The respondents, however, have gone into the whole merits of this case, and have shown to my entire satisfaction that this $4,000,000 new stock, or all that has been issued of it, was issued illegally and in fraud of the rights of the other stockholders. In the first place, the charter of this company fixes the number of the directors to be seven, and no person who is not a stockholder can be a director in the company; and *363 secondly, the notice of the meeting to vote an increase of the capital is required by the statute to be signed by a majority of the directors, and the notice in this case was only signed by four, including Seeor, who was not a stockholder, and could not act as a director. The notice being deficient, the vote to increase the stock $4,000,000 was illegal. The vote then and , there taken disposing of a large share of this stock in the purchase of the stock of other steamship companies was illegal for two reasons. Among others which might be stated, there was only a very small portion of the stock voted on personally, but a little over $8,000 of it in favor, while nearly $25,000, was voted on by proxy. These proxies did not authorize these parties to vote on that stock for any purpose, but simply on the question of increase of the capital stock. This stock was illegally issued, because it was issued for objects and purposes entirely foreign to the business for which this corporation was created ; and if we take into consideration the whole scheme and plan of the arrangement upon which it was issued, it is not saying too much to affirm that it was entirely destructive of the objects contemplated by the charter of this corporation ; for in the purchase of these other lines they bind themselves not to use their own franchise. It cannot be pretended for a moment that these directors could deal with this stock in this extraordinary manner, for their own advantage and gain, without authority from the stockholders. As I understand the law, all these old stockholders had a right to shares in tire issuing of this new stock in proportion to the amount of stock held by them. And if none of the stock was to be apportioned to the old stockholders, they had certainly the right to have the new stock sold at public sale, and to the highest bidder, that they might share in the gains arising from the sale. In short, the old stockholders, as this was good stock and above par, had a property in the new stock, or a right at least to be secured the profits to be derived from a fair sale of it, if they did not wish to purchase it themselves; and they have been deprived of this by the course which these directors have taken with this new stock by transferring or issuing it to themselves and others in a manner not authorized by law.
The next question to be considered is whether the election complained of was valid. The inspectors of election, whose *364 duty it was to have acted on the 12th of ETov., 1866, and held the election, refused to go on and act, and the stockholders, who were lawfully convened by a proper call for the election, after the inspectors refused to hold the election, went on and appointed or elected new inspectors of election, who held the election, received all the votes of those entitled to vote, and conducted the election in all respects fairly and legally ; and the election of directors was valid, if the stockholders had the right to proceed under the circumstances and elect new inspectors of election. There was not a majority of the directors present, and application was made to the two who were present to appoint new directors, and they refused. They were right in refusing, for they had no authority to appoint, as it required a majority of theffioard. The stockholders were in a condition where no majority of the directors could be got on the day, and there must have been a failure to elect if the stockholders could not proceed in the manner they did.
I incline to think that these corporators had the right to proceed and. elect inspectors of election and proceed in the manner they did. By the R. S., “Every corporation, as such, has power to have perpetual succession by its corporate name for the period limited in its charter, and when no period is limited •pérpetually.” Also, “ To appoint such subordinate officers and agents as the business of the corporation shall require.” These are no more than the common law rights incident to every corporation, and our statute declares they shall vest in every corporation. The power to elect directors, who shall have the control and management of the affairs of the corporation, may be under some circumstances vital to preserve its succession and organized existence. The transactions of this corporation for the last few months show that its corporate existence was in peril. The directors in office at the time of the election complained of, by their unlawful dealings with the affairs and interests of the corporation, had quite likely forfeited their charter if the State should intervene. I will not enter upon any discussion of the authorities referred to on the argument of this case, but will content myself by simply saying that such an emergency and contingency had arisen that the ordinary forms of procedure prescribed and contemplated by the charter and laws regulating these elections had *365 suddenly failed to accomplish the purposes contemplated by them, in. so much that under the circumstances the corporators themselves had the right to exercise the power themselves, and provide for the appointment of inspectors of election, and proceed in the manner they did. The fact that the oath was not subscribed by these inspectors of election cannot invalidate the election, certainly, where a proper oath was administered to them. I have abstained from considering the question whether those provisions of the law, giving directions as to the manner of holding these elections, and which were not observed in this case, are to be considered under ordinary circumstances directory, but prefer to place the case upon the ground that where those regulations, which were intended merely to preserve and regulate the rights of the stockholders tend, in their strict observance, to the destruction of those corporate rights, instead of their preservation, a departure from them by the corporators should be sustained in law.
This application to remove and declare invalid this election of directors, held on the 13th of November last, must be denied. -